# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAJOR KYLE PETROSKEY <br> and JAMIE PETROSKEY <br> <br> Plaintiffs, <br> <br> vs. <br> <br> DAVID C. GRANT, M.D., *et al.* <br> <br> Defendants. | * <br> * <br> * <br> * <br> * <br> * Case No.: 14-1735 (RMC) <br> * <br> * <br> * |

## PLAINTIFFS' FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)(B) EXPERT WITNESS DISCLOSURE

In accordance with this Court's Scheduling Order, the Plaintiff respectfully submits this expert witness disclosure pursuant to the Federal Rules of Civil Procedure 26(a)(2)(B).

**1. Robert D. Pugatch, M.D. (Radiologist)**
**University of Maryland School of Medicine**
**22 South Greene Street**
**Baltimore, Maryland 21201**

At the time of trial, the Plaintiff intends to call Robert D. Pugatch, M.D. as an expert in the field of radiology. Dr. Pugatch's curriculum vitae and report are attached as **Exhibits 1 & 2**. Dr. Pugatch's report contains all the medical records and facts that formed the basis of his respective expert opinions.

Dr. Pugatch has reviewed the entire MedStar St. Mary's Hospital chart, Dr. Jyoti D. Shah's medical records, the CT scan of the thorax with contrast conducted on October 17, 2011 at MedStar St. Mary's Hospital, the radiological report signed by David C. Grant, M.D. from Center Radiology, P.C., and the June 6, 2012 CT scan of the chest and radiological report taken at Walter Reed National Military Medical Center. Dr. Pugatch is familiar with the national

standard of care that applies to radiologists and to health care providers that provide radiological services.

At the time of trial, Dr. Pugatch is expected to testify, on the basis of his background, education, training and experience, as well as his review of the pertinent records, that David C. Grant, M.D. and Center Radiology, P.C. deviated from the national standard of care in the following manner:

a. Defendant David C. Grant, individually and as an actual and/or apparent agent, servant and/or employee of Center Radiology, P.C., failed to properly interpret the CT scan with contrast of the chest performed at Medstar -St. Mary's Hospital on October 17, 2011. Dr. Grant, the radiologist who interpreted the study, should have recognized a 2.3 x 4.1 cm right tracheal/paratracheal mass on the CT scan of the chest performed with contrast. Dr. Grant concluded that this was a normal CT angiogram of the chest. Dr. Grant's failure to properly interpret Major Petroskey's CT scan is a violation of the national standard of care.

b. Defendant David C. Grant, individually and as an actual and/or apparent agent, servant and/or employee of Center Radiology, P.C., failed to properly inform and alert the MedStar St. Mary's Hospital emergency room of an abnormal finding.

c. Defendant David C. Grant, individually and as an actual and/or apparent agent, servant and/or employee of Center Radiology, P.C., failed to recommend further diagnostic and further medical testing.

d. Defendant David C. Grant, individually and as an actual and/or apparent agent, servant and/or employee of Center Radiology, P.C., failed to properly report and recommend that the patient be examined by an interventional pulmonologist and thoracic surgeon to investigate the suspicious nature of the mass that was visible.

Dr. Pugatch is further expected to testify that these deviations from the national standard of care directly and proximately caused an 8 month delay in diagnosis, resulting in Kyle Petroskey's death on April 2, 2015.

Dr. Pugatch's expert fees are $500 per hour for deposition testimony and $600 per hour for trial testimony. Attached as **Exhibit 3** is a copy of Dr. Pugatch's expert fee schedule. Dr. Pugatch is not in possession of a list of cases in which he testified as an expert within the last 4 years.

    **2.**    **Joel Bowers, M.D. (Radiologist)**
            **Metropolitan Radiology Associates**
            **1123 State Route 3 North #148**
            **Gambrills, Maryland 21054**

At the time of trial, the Plaintiff intends to call Joel Bowers, M.D. as an expert in the field of radiology. Dr. Bower's curriculum vitae and report are attached as **Exhibits 4 and 5.** Dr. Bowers' report contains all the medical records and facts that form the basis of his respective expert opinions.

Dr. Bowers is familiar with the national standard of care that must be adhered to by radiologists and health care providers which provide radiological services. Dr. Bowers has reviewed the entire MedStar St. Mary's Hospital chart, Dr. Jyoti D. Shah's medical records, the CT scan of the thorax with contrast conducted on October 17, 2011 at MedStar St. Mary's Hospital, and the radiological report signed by David C. Grant, M.D. from Center Radiology, P.C., as well as the June 6, 2012 CT scan of the chest and the radiological report taken at Walter Reed National Military Medical Center.

At the time of trial, Dr. Bowers is expected to testify that, on the basis of his background, education, training and experience, as well as his review of the pertinent medical records, David C. Grant, M.D., individually and as an actual and/or apparent agent, servant and/or employee of

Center Radiology, P.C., deviated from the national standard of care and were negligent in the following manner:

a. Failure to carefully review and report a suspicious mass that was visible on the October 17, 2011 CT scan. Defendant David C. Grant's interpretation of the CT scan study dated October 17, 2011 is: "Normal CT angiogram of the chest with contrast." This was an incorrect interpretation and a deviation from the national standard of care. Dr. Bowers will testify that there is, in fact, on the study a 3.2cm right sided multilobular mediastinal soft tissue mass located superior to the arch of the azygos vein, anterior to the superior vena cava and lateral to the trachea. The mass indents the right lateral wall of the trachea and causes narrowing of the underlying tracheal lumen. Dr. Bowers will testify that the mass must be considered malignant until proven otherwise. Dr. Bowers will testify that a reasonable prudent radiologist should have appreciated the presence of the mediastinal mass along with its potential to be malignant.

b. Failure to properly inform and alert the Medstar St. Mary's Hospital emergency room of this abnormal finding.

c. Failure to recommend further diagnostic and medical testing.

d. Failure to properly report and recommend that the patient be referred and examined by the proper medical specialist, an interventional pulmonologist and a thoracic surgeon to investigate the suspicious nature of the mass that was visible.

Dr. Bowers is further expected to testify that these deviations from the national standard of care directly and proximately caused an 8 month delay in diagnosis, thereby resulting in Kyle Petroskey's death on April 2, 2015.

Dr. Bowers' expert fee is $500 per hour for both deposition testimony and trial testimony. Attached as **Exhibits 6 & 7** are copies of Dr. Bowers' schedule of expert fees and a list of the cases in which he has testified as an expert witness.

**3.     Arnold Schwartz, M.D. (Anatomic Pathologist)
        George Washington University Hospital
        900 23rd Street NW
        Washington, D.C. 20037**

At the time of trial, the Plaintiff intends to call Arnold Schwartz, M.D. as an expert in clinical and anatomic pathology. Dr. Schwartz is affiliated with George Washington University Hospital. His curriculum vitae and report are attached as **Exhibits 8 & 9**. Dr. Schwartz has reviewed all the medical records from MedStar St. Mary's Hospital, Jyoti D. Shah, M.D., Walter Reed National Military Medical Center, and the National Institutes of Health. Dr. Schwartz previously performed a discovery and inspection of the pathology slides and the pathology report dated June 11, 2011 from the Walter Reed National Military Medical Center. At the time of trial, Dr. Schwartz is expected to testify, on the basis of his background, education, training and experience, as well as his review of the pertinent medical records, that:

a.     The decedent, Major Kyle Petroskey, had a tracheal cancer that presented with cough and hemoptysis in 2011. The tumor was associated with tracheal irritation and erosion and as a mucosal lesion was approachable for endoscopic biopsy diagnosis.

b.     The tumor on presentation was associated with paratracheal involvement and/or nodal spread but without involvement of the esophagus and without disseminated metastases.

c.     The tumor was identifiable on the CT scan performed on October 17, 2011 according to expert radiological opinion.

d.     The tumor is histo-pathologically diagnosed as a squamous cell carcinoma with prominent mitotic activity and shows immuno-reactivity for P63 and CK5/6.

e. As a direct and proximate result from the delay in diagnosis, the cancer progressed and invaded the esophagus. The delay caused the cancer to progress from an early stage cancer to a non-resectable advanced stage cancer.

f. Although chemotherapy and radiation provided some initial shrinkage of the tumor, the extent of the tumor caused additional dissemination with metastases to bone and soft tissue.

g. The delay in diagnosis of the cancer was the direct and proximate cause of Major Petroskey's death that occurred on April 2, 2015.

Dr. Schwartz' expert fee is $500 per hour for both expert deposition testimony and trial testimony. Attached as **Exhibit 10** is a list of cases in which Dr. Schwartz has previously testified. He does not have a fee schedule, per se.

**4. Richard Hirschman, M.D. (Oncologist/Hematologist)
247 Third Avenue Suite 401
New York, New York 10010**

At the time of trial, the Plaintiff intends to call Richard Hirschman, M.D. Dr. Hirschman is Board Certified in oncology and hematology. He is affiliated with Beth Israel Hospital Medical Center and is an Associate Clinical Professor of Medicine at Mount Sinai School of Medicine in New York, New York. Dr. Hirschman has reviewed all the medical records from St. Mary's Hospital, Jyoti D. Shah, M.D., Walter Reed National Military Medical Center, and the National Institutes of Health. Dr. Hirschman's curriculum vitae and report are attached as **Exhibits 11 & 12**. Dr. Hirschman, on the basis of his background, education, training and experience, as well as his review of the pertinent medical records, is expected to testify to the following at the time of trial:

a. Major Kyle Petroskey had an incurable carcinoma of the trachea in June 2012, and all subsequent treatment was focused on palliation of symptoms and to delay death.

b. Had the diagnosis been made on or about October 17, 2011 or November 3, 2011, when the CT scan of the chest was incorrectly read or when the bronchoscopy was incompletely performed, the stage of the cancer would have been resectable and more likely than not curable with a 5 year disease specific survival in excess of 50%.

c. As a result of the delay of eight months in the diagnosis, the cancer spread to an incurable stage which directly and proximately caused Major Petroskey's death on April 2, 2015.

Dr. Hirschman's expert fees are $500 per hour for expert depositions and $10,000 for trial testimony. Attached as **Exhibits 13 & 14** are copies of Dr. Hirschman's schedule of expert fees and list of cases in which he has testified.

**5. Cameron D. Wright, M.D. (Thoracic Surgeon)**
   **55 Fruit Street**
   **Boston, Massachusetts 02114**

At the time of trial, the Plaintiff intends to call Cameron Wright, M.D. Dr. Wright is the Associate Division Chief of Thoracic Surgery at Massachusetts General Hospital in Boston, Massachusetts. Dr. Wright's curriculum vitae and report are attached as **Exhibits 15 & 16**. At the time of trial, Dr. Wright is expected to testify, on the basis of his background, education, training and experience, as well as his review of the pertinent medical records, to the following:

a. Major Petroskey presented with a cough, burning sensation and hemoptysis in October 2011 to Jyoti D. Shah, M.D, a pulmonologist. Dr. Shah evaluated Major Petroskey and eventually recommended and performed a bronchoscopy to investigate his hemoptysis.

b. Dr. Shah should have been able to see the tumor and make a formal diagnosis.

c. The October 17, 2011 CT scan of the chest reviewed by Dr. Wright clearly shows an obvious mid to lower tracheal mass consistent with a tracheal tumor which was not reported by the radiologist, Dr. David C. Grant nor remarked upon at all by Dr. Shah.

d. There was an eight (8) month delay in diagnosis of Major Petroskey's squamous cell cancer of the trachea.

e. Major Petroskey was young, healthy and had an ideal body physique to undergo a tracheal resection. The cancer would have been treated postoperatively by adjuvant radiation therapy.

f. Major Petroskey's condition would have improved if he had undergone resection in October or November 2011.

g. At the time of diagnosis in June of 2012, a CT scan demonstrated that the tumor had grown to 5 cm. in length. At that time a suspicious new lung nodule was present which was most likely a metastasis.

h. In June of 2012, the tumor was inoperable.

i. Dr. Wright is expected to testify that the delay in diagnosis directly and proximately caused Major Petroskey's conscious pain and suffering from the date of diagnosis until the date of his death on April 2, 2015, and that the delay in diagnosis directly and proximately caused his death.

Dr. Wright's expert fee is $700 per hour. Attached as **Exhibit 17** is a copy of Dr. Wright's schedule of expert witness fees. Dr. Wright has <u>not</u> testified as an expert in the last 4 years.

6. **Kenneth Reagles, Ph. D (Vocational Rehabilitation)**
   **Bridgewater Place, Suite 600**
   **500 Plum Street**
   **Syracuse, New York 13204**

At the time of trial, the Plaintiff intends to call Kenneth Reagles, Ph.D. Dr. Reagles' curriculum vitae and report are attached as **Exhibits 18 & 19.** At the time of trial, Dr. Reagles is expected to testify, on the basis of his background, education, training and experience, as well as his review of the pertinent records, with respect to Major Petroskey's probable future career progression and unimpaired earnings capacity within the military and as a civilian, including military base allowances, housing allowances, basic pay, flight pay, loss of military pension benefits as a former active Army Officer in the United States Military. These all serve as the foundation for the calculation of economic loss in both the United States Military and private defense contractor sectors that his estate will sustain as a result of his disease that led to his death. He is further expected to testify with respect to the economic value of Major Petroskey's lost capacity to perform services and household work, all of which are contained in Dr. Reagles' report.

Dr. Reagles' expert fees are $5,000 for four (4) hours or less of deposition and trial testimony and $8,000 for more than 4 hours of deposition or trial testimony. Attached as **Exhibits 20 & 21** are copies of Dr. Reagles' schedule of expert fees and list of cases in which he has testified as an expert.

7. **Richard Lurito, Ph.D. (Economist)**
   **1491 Chain Bridge Road**
   **McLean, Virginia 22101**

At the time of trial, the Plaintiff intends to call Richard Lurito, Ph.D. as an expert in the field of economics. Dr. Lurito's curriculum vitae and report are attached as **Exhibits 22 & 23**. At the time of trial, Dr. Lurito is expected to testify, on the basis of his background, education,

9

training and experience, as well as his review of the pertinent records, with respect to Major Petroskey's total future loss of income, including military pension benefits, military subsistence allowances, housing allowances, basic pay, and flight pay both in the military and private/civilian defense contractor sector. He is also expected to testify as to the loss of household services and consortium claim on behalf of Mrs. Jamie Petroskey, the surviving spouse, all of which are contained within Dr. Lurito's expert report.

Dr. Lurito's deposition fee per hour is $350 and his fee for trial testimony is $1800 per hour. Attached as **Exhibits 24 & 25** are copies of Dr. Lurito's schedule of expert fees and a list of cases in which he has previously testified.

8. This list does not include rebuttal and/or impeachment expert witnesses.

9. The Plaintiff reserves the right to call appropriate rebuttal and/or impeachment expert witnesses.

10. The Plaintiff reserves the right to supplement all expert opinions as additional medical information is received during discovery.

11. The Plaintiff reserves the right to call any of the physicians, nurses, and/or medical personnel at Center Radiology, P.C., Shah Associates, M.D., LLC, Walter Reed National Military Medical Center, and the National Institutes of Health, as well as any treating physicians who are named in the decedent's medical records.

12. The Plaintiff reserves the right to ask questions of any physician, nurse, and/or medical professional whose names appear on any medical records or hospital chart relating to Major Kyle Petroskey.

13. All expert opinions are to be with a reasonable degree of medical certainty.

14. The Plaintiff reserves the right to supplement and/or amend this expert witness disclosure.

15. Since discovery is ongoing, the Plaintiff reserves the right to supplement, modify, and amend the opinions regarding the experts who are involved in providing expert opinions with respect to the issues in this case.

Respectfully Submitted,

JOSEPH GREENWALD & LAAKE, P.A.

By: \_\_/s/Andrew E. Greenwald\_\_\_\_
Andrew E. Greenwald, DC Bar #034918
Steven B. Vinick, DC Bar #439359
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200

*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of May, 2015, a copy of the foregoing was served via CM/ECF to the following:

Andrew J, Spence, Esquire
Steven Altman, Esquire
Altman, Spence, Mitchell and Brown
10306 Eaton Place, Suite 200
Fairfax, Virginia 22030

    /s/Andrew E. Greenwald
Andrew E. Greenwald